## THE OSWEGO BANK *vs.* J. & B. KNOWER.

Nothing short of the clearest evidence of assent, express or implied, on the part of indorsers of a promissory note, will amount to a waiver of notice of protest.

*Held*, that the circumstances of the case did not amount to a waiver.

ACTION upon the two following promissory notes:

$6000.                                Oswego, Dec. 31, 1840.

Three months after date, I promise to pay to the order of J. & B. Knower, at the Oswego Bank six thousand dollars, value rec'd with interest.

$5,700.                               Oswego, Dec. 31, 1840.

Four months after date I promise to pay to the order of J. & B. Knower, at the Oswego Bank, five thousand seven hundred dollars, for value rec'd with interest.

These notes were signed by Edmond Knower, maker, and indorsed by the defendants. E. Knower was the president of the bank, and had the chief control of its affairs. The defendants are his brothers, and when the notes fell due respectively, he directed the cashier not to protest them.

The two notes grew out of accommodations at the bank for the benefit of E. Knower as early as 1838, and were continued running there by renewals until they resulted in the two given in evidence. The defendants were indorsers upon all of them with one or two exceptions. None of the notes while thus running in the bank were protested. If not renewed as soon as they fell due, the protest was omitted by direction of E. Knower, the president. He was the financial officer of the bank from January, 1838, to the fall of 1841, when he left the institution in consequence of ill health, and during all this time the cashier acted in conformity with his advice and directions.

The defendants were partners in business in the city of Albany, and the indorsements upon the several notes dis-

counted at the bank are in the handwriting of John Knower. It appeared that blank indorsements, thus made, were left in the possession of Edmond to use at his discretion, for the purpose of procuring accommodations at the bank. They were his standing accommodation indorsers.

E. Knower, while president, frequently gave directions not to protest other notes in the bank, besides those indorsed by the defendants; and Mr. Bronson testified, that he was the predecessor of Edmond, and that, while such president, he was in the habit of giving directions what paper should be protested, and what not. That the president in all cases assumed this power, possessed and exercised it, though he knew of no resolution of the board confering it.

Evidence was given that John Knower had admitted that he had some securities for responsibilities assumed for Edmond, and particularly a mortgage of $15,000 upon his interest in the old Fortification block. No. 2. This security was supposed to be good at the time it was given, 3d September, 1839, but it turned out to be worth nothing; and the property has since been sold on the State mortgage given for the original purchase money, and did not bring sufficient to pay said mortgage.

There was, also, evidence of the conveyance of other parcels of property by Edmond to the defendants, but not particularly connected with the transaction in question; and full equivalents were given for the same.

When the plaintiff rested, the counsel for defendants moved for a nonsuit, and among others, upon the following ground, to wit, that there was no evidence that the notes in question had been duly protested for non-payment, nor any notice of the same given to the defendants; which motion was overruled.

The defendants then gave evidence in explanation of the property purchased of Edmond, and of the securities received; and of his indebtedness to them, and to the estate of Benj. Knower, his father, which it is not material to detail, as it has no bearing upon the only point decided.

When the testimony closed, the judge charged, among other things, as follows, in respect to the waiver and

protest: That it may be infered from facts and circumstances—and that, if the defendants knew that the previous notes, the predecessors of those in suit, fell due, and they received no notice of protest, and then again indorsed the notes given in renewal, the jury may say, whether it is sufficient to infer a waiver of notice in respect to the notes in question. That the testimony shows a series of notes resulting in the two in suit; that upon these were blank indorsements of the name of defendants' firm, shewing the great confidence which was reposed in Edmond, the brother; for by the blank indorsements they, in effect, authorized him to write a note on the other side for any amount he chose, and they would be responsible for the same. Again, Edmond had power to prevent any notice of protest being given, and it was submitted to the jury whether the defendants had not knowledge of this. And again, E. Knower executed to them a mortgage of $15,000 to indemnify them against these indorsements; and although it had been proved to have turned out insufficient security, and is of itself no excuse of want of protest and notice; yet it was considered good security at the time, and he submitted to the jury, if it was not fair to presume that the defendants considered themselves secured; and if so, it might, together with the other circumstances in the case, operate as a waiver. That there was a whole sheet of blank indorsements, which was evidence that the notes were to be renewed, and intended to enable E. Knower to renew the same. The judge then, upon the whole evidence, submitted the point to the jury, whether there was a waiver or not. They found for the plaintiff $13,742.95, being principal and interest.

Defendants move for a new trial on a bill of exceptions.

*By the Court,* NELSON, Ch. J. I am of opinion the learned judge erred in his charge to the jury upon the question of waiver of notice; and that no satisfactory, or legal excuse for want of the same was given upon the trial.

In the first place, it is quite apparent that notice of protest was withheld for the very purpose of not charging the defendants, as indorsers upon the notes. It seems that the power

to dispense with it, in case of paper discounted at the bank, was lodged in the president, for this purpose, and had been exercised repeatedly by the predecessor of E. Knower; and, also, by himself, in respect to other paper than the notes in qestion.

Mr. Bronson states, that the president always assumed the authority, and possessed it, of saying what paper should be protested; that the practice of the bank was that all should be; but the president always exercised his discretion to withhold paper from protest. Why withhold it? Obviously, right or wrong, for the purpose of not charging the parties, and trusting to other names upon the paper, or securities in hand.

It seems to me plain enough, that this fact lays no foundation whatever for an inference by either court or jury, that the defendants have waived the necessity of due notice, but the contrary. For it shows it was omitted, designedly, with the intent that they should not be charged.

Then as to the securities in the hands of the defendants; we have repeatedly held that this fact, even if they should afford abundant indemnity for the responsibilities assumed in consequence thereof, does not operate to change the legal liability of the indorser so as to make it absolute instead of conditional; in other words, to make him a principal, instead of a surety on condition of due demand and notice. (*Mechanics' Bank* v. *Griswold*, 7 Wend., 166; *Spencer* v. *Har[?]ey*, 17 id., 489.)

And as to the blank indorsements, I see nothing in these affording ground in favor of the inference claimed.

Suppose a power of attorney had been given to use the name of the defendants' firm as accommodation indorsers, which would have been no very uncommon case, could the idea have been entertained, for a moment, that the simple indorsement would have made them absolutely liable? or laid any foundation for such an inference? I apprehend no body would contend for the proposition. And these blank indorsements are nothing more than a standing power to that effect.

If the defendants had intended to dispense with notice,

they would have signed as makers at once, and become absolutely bound. The very fact of confining their security on the paper to the character of indorsers shows that they meant to limit their liability accordingly; and to be entitled to all the benefits incident to it.

An indorsement in blank, in judgment of law, is as precise and distinct, and as well known and understood, as if the liability, or condition of the usual demand and notice, had been written out upon the back of the paper; and nothing short of the clearest evidence of the assent of the defendants, express or implied, should be regarded as sufficient to waive the condition, or change the nature of the contract, making it an absolute, instead of a conditional one.

Upon the whole, I am satisfied that to allow the circumstances put forth here, whether taken separately or in the aggregate, as laying the foundation for an inference of a waiver of demand and notice, would be going farther than any case has yet gone in dispensing with the contract of the indorser; and farther than will be consistent with the uniformity and stability of the law so important in respect to commercial paper.

Indeed, if we analyze the facts in the case, and reduce them to the particulars bearing upon the defendants, and for which they may be properly held responsible, it will be found that there is little else in it deserving the name of evidence, independently of the unlimited power given to the brother to use the name of their firm as indorsers, leading even in the remotest degree to an assent to the waiver. And we can hardly be expected to infer it from the fact that the power given to indorse is a general one. On the contrary, we suppose that the limitation of the liability assumed to *that* of indorsement, and *that* only, shows clearly enough an intention to stand upon the paper in that character, and in *that* only, however extended or onerous the liability might become.

For these reasons, I think a new trial should be granted.

New trial granted, costs to abide event.